UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORDAN'S LADDER LEGAL PLACEMENTS, LLC,<br><br>*Plaintiff,*<br><br>-against-<br><br>MAJOR, LINDSEY & AFRICA, LLC,<br><br>*Defendant.* | No. 21 Civ. 7124 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

SHOOK, HARDY & BACON, L.L.P.
William E. Vita, Esq.
1325 Avenue of the Americas
28th Floor
New York, NY 10019
(212) 989-8844
(929) 501-5455 (fax)
wvita@shb.com
*Attorneys for Defendant*
*Major, Lindsey & Africa, LLC*

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION ...........................................................................................................1 | |
| II. | THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT..............................................................................................................5 | |
| | A. | MLA Did Not Act Maliciously................................................................................5 |
| | B. | No Contract Was Formed Between Jordan's Ladder and Pillsbury Regarding Catterson...................................................................................................7 |
| | C. | MLA Did Not Have Knowledge of the Terms of the Purported Contract Between Pillsbury and Jordan's Ladder ...................................................................8 |
| | D. | Plaintiff's Request for Declaratory Relief Is Duplicative........................................9 |
| III. | CONCLUSION..............................................................................................................10 | |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V.E.L.A., Inc v Estate of Marilyn Monroe, LLC*,
 No. 12 Civ. 4828, 2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018) ...............................................9

*Aeolus Down, Inc. v. Credit Suisse Int'l*,
 No. 10 CIV. 8293 LLS, 2011 WL 5570062 (S.D.N.Y. Nov. 16, 2011) ..................................10

*Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*,
 259 F.Supp.3d 16 (S.D.N.Y. 2017), *aff'd,* 712 F. App'x 85 (2d Cir. 2018).............................5

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
 No. 18-CV-6739L, 2021 WL 2587160 (W.D.N.Y. June 24, 2021) ......................................6, 9

*Medtech Products Inc. V. Ranir, LLC*,
 596 F.Supp.2d 778 (S.D.N.Y. 2008).........................................................................................9

*Sofi Classic S.A. de C.V. v. Hurowitz*,
 444 F. Supp. 2d 231 (S.D.N.Y. 2006).....................................................................................10

*State St. Glob Advisors v Visbal*,
 431 F.Supp. 3d322 (S.D.N.Y. 2020).........................................................................................9

*Taboola, Inc. v. Ezoic Inc.*,
 2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020)...........................................................................9

Defendant Major, Lindsey and Africa, LLC ("MLA") respectfully submits this Memorandum in further Support of its Motion, in lieu of an answer, to Dismiss Jordan's Ladder Legal Placements, LLC's ("Plaintiff" or "Jordan's Ladder") Complaint and in response to Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion to Dismiss ("Opposition").

## I. INTRODUCTION

Melissa Jordan ("Jordan"), the principal of Jordan's Ladder, seeks a placement fee for the lateral movement of attorney James Catterson ("Catterson") to Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") from another firm.

The Fee Agreement that Plaintiff wants this Court to enforce is unambiguous. It requires, at Section 2, that every candidate "must give his/her express permission, preferably in writing" before a Search Firm can submit the candidate's resume or information to Pillsbury. Yet, Plaintiff's Opposition (as well as the Complaint before it) produces not a single, non-speculative fact to show that Catterson ever granted Plaintiff express permission to represent him in his lateral move to Pillsbury. Plaintiff has not complied with the terms of the agreement it seeks to enforce.

Faced with the undeniable reality that Plaintiff is trying to earn a placement fee for Catterson's lateral move, against Catterson's specific wishes and despite his direct admonition to Plaintiff that he did not want Plaintiff to represent him, Plaintiff's entire claim now boils down solely to the assertion that Jordan is entitled to this large ($375,000.00) fee because she somehow obtained permission to represent Catterson from his colleague, Robert Bosch ("Bosch") and then "presented" Catterson to Pillsbury. (Opposition, page 2, "Jordan did *all* of the work necessary to present Catterson as a candidate under the Fee Agreement with Pillsbury . . .") (Emphasis in original.) Neither of these allegations is true and thus these assertions unravel upon a simple reading of the Complaint, which makes it very clear that: 1) Bosch never said that Catterson

granted permission to Plaintiff to represent him, no such facts are pled and none exist; and 2) Plaintiff did not "present" Catterson to Pillsbury, either as that word is commonly understood or as it is described in the Fee Agreement.

Plaintiff does not assert that Catterson ever provided any written or verbal permission to Jordan to "present" him to Pillsbury. Nor did Bosch provide such permission as some kind of "explicit intermediary" (Opposition, page 4). To the contrary, as the Complaint itself confirms: "Bosch specifically asked Jordan not to reach out to Catterson until Bosch had confirmed both Catterson's interest in Pillsbury as well as <u>Catterson's willingness to speak with Jordan specifically</u>." (Complaint, at ¶ 32. Emphasis added.) That confirmation never came and thus Plaintiff's attempt to turn Bosch into an "explicit" conduit for Catterson's permission must fail.

Jordan also "emailed Bosch to request that Bosch pass her contact information to Catterson <u>if and only if</u> Catterson wanted to discuss the Pillsbury opportunity with her." (Complaint, at ¶ 32. Emphasis in original.) Contrary to Plaintiff's speculation, the fact that the Complaint does not allege that Bosch did pass Jordan's contact information to Catterson leads inescapably to the conclusion that Catterson did not want to "discuss the Pillsbury opportunity with her." Bosch never said that he was deputized by Catterson or was acting on Catterson's behalf to grant Catterson's permission to Plaintiff to represent him. Therefore, no matter how Plaintiff now tries to spin this, the facts are clear: Bosch never said that Catterson authorized Plaintiff to represent him. There is not a single statement to this effect from either Catterson or Bosch. Plaintiff is left with nothing but fanciful and impermissible speculation.

Further, Jordan did not even "find" Catterson or refer him to Pillsbury. She did not inform Catterson about potential lateral opportunities at Pillsbury or prepare him to discuss such a lateral move to Pillsbury. Nor did Jordan bring Catterson to Pillsbury's attention. Bosch did that.

(Complaint, at ¶ 32.) Indeed, Jordan's claim (Opposition, at 4), that she gave Pillsbury Catterson's name, is belied by Jordan's own Complaint, which indicates (at ¶ 32) that Bosch gave Pillsbury Catterson's name. Bosch brought Catterson together with Pillsbury, not Jordan and any attempt to obscure this fact is disingenuous.

For example, the Oppositions states, at page 3, that "Catterson had given every indication that he knew Jordan to be presenting him [to Pillsbury] and was authorizing her to do so." This statement is completely contradicted by the Complaint. Catterson never even communicated with Jordan, much less gave her permission to "present" him. Similarly, the allegation that Catterson knew that Jordan was "presenting" him is not supported by a single fact, as opposed to wishful conclusions. And if anyone "presented" Catterson to Pillsbury, it was Bosch, not Jordan, as the Complaint itself states: "[o]n or about January 12, 2021, Bosch spoke with Baum. That same day, Bosch expressed to Jordan that the discussion with Baum had gone well, and informed Jordan that he had broached with Baum, the possibility of bringing a colleague along with him to Pillsbury- namely Catterson." (Complaint, at ¶ 32. Emphasis added.)

Indeed, the Complaint does not assert that Jordan even knew of Catterson's existence or his possible interest in Pillsbury, until after Bosch told Pillsbury about Catterson. (Complaint, ¶ 32.) This is not argument or supposition, this is a recitation of the facts as asserted in the Complaint.

The claim that Jordan introduced Catterson to Pillsbury or "presented" him is therefore a fiction. Pillsbury already knew about Catterson, from Bosch, when Jordan set up the conference call for Bosch, in which Catterson participated. Catterson never provided any written or verbal authorization to Jordan or through Bosch (as a supposed intermediary) to Jordan to "present" him

3

to Pillsbury. Indeed, why would he do so when he was working with Larry Mullman as the recruiter who would submit him to any firms of interest?

Nor did Jordan "present" Catterson by providing <u>any</u> information about him, such as who he was, what experience he had, why he wanted to leave his current firm, details about his portable book of business or why he would be a good fit for Pillsbury. The Fee Agreement requires a Search Firm (such as Jordan's Ladder) to submit to Pillsbury "the most accurate and current information known" about the candidate (Section 7). Jordan submitted no information whatsoever about Catterson, undoubtedly because she had never communicated with him and knew nothing about him.

What then, is the "significant effort" (Opposition, page 3) Jordan undertook to "present" Catterson to Pillsbury? She set up a phone call, for her client Bosch and forwarded a confidentiality agreement (which Catterson signed and sent to Bosch since Bosch requested it without any additional indication that such action was an authorization for Bosch or Jordan to act on his behalf to be presented to Pillsbury), and as a result, Jordan contends that she should be paid $375,000.00 for "presenting" Catterson (a person she had never met, seen, spoken or written to) to Pillsbury.

Jordan argues that she is entitled to this fee because Catterson irrevocably (albeit involuntarily) became Jordan's Ladder's "client" when he participated in the conference call with Pillsbury and provided his signed confidentiality agreement to Bosch as he requested. In Jordan's mind, these two acts somehow provided her with a basis to surreptitiously trap Catterson into becoming her client, despite Catterson's express directive to her that he did not want to be her client and instead, wanted Lawrence Mullman ("Mullman"), at MLA, to represent him. Indeed, Plaintiff concedes that Catterson "wanted Mullman to represent him going forward vis-à-vis

4

Pillsbury and that Mullman later took other steps on Catterson's behalf," yet labels these facts as "wholly irrelevant." (Opposition, at page 3.) Plaintiff deems these inconvenient facts irrelevant because it argues that it ensnared Catterson as an unwitting client merely by performing the clerical functions of helping to set a conference call and forwarding the confidentiality agreement he provided to his colleague Bosch. Jordan's Ladder is therefore dismissing the express desires of its own alleged client, the person that Jordan's Ladder claims to represent, in favor of a "gotcha" ambush. Respectfully, this court should not countenance such behavior.

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT

### A. MLA Did Not Act Maliciously

Plaintiff has not and cannot establish that MLA interfered with a valid contract. Even if Plaintiff could establish this, economic interest is a defense to a tortious interference of a contract claim, where, as here, there is a pre-existing relationship between the defendant and a third party, unless there is a showing of malice or illegality. *See, e.g., Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.,* 259 F.Supp.3d 16, 29–30 (S.D.N.Y. 2017), *aff'd,* 712 F. App'x 85 (2d Cir. 2018). The fact that MLA's relationship was with Catterson, rather than Pillsbury does not change the fact that MLA was acting out of economic self-interest, rather than acting to harm Plaintiff. But Plaintiff's Complaint does not even plead malice and its Opposition continues to rely on conclusory language, bereft of actual fact, by asserting that MLA's conduct was, in some unarticulated manner, "malicious." (Opposition, pages 6-7.) Such conclusory language, devoid of factual enhancement, is insufficient to survive a motion to dismiss.

MLA and Mullman are in the business of laterally placing attorneys at different firms. Mullman and Catterson had a preexisting relationship (as did Mullman and Bosch). It was Catterson's clearly stated desire that Mullman – not Jordan – represent him in his move to

5

Pillsbury. Mullman obliged the request and now naturally seeks economic compensation for his role. This is a normal part of the free market economy and there is no malice that is or can reasonably be pled. It is richly ironic that Jordan accuses MLA of improper behavior, when it is Jordan who is seeking a large fee for merely arranging a conference call for a candidate that she did not introduce to Pillsbury and who did not want her to represent him.

Plaintiff's claim (Opposition, page 5) that Mullman "threatened" Jordan (in her secretly recorded and selectively excerpted conversation) by pointing out that Catterson and Bosch could go elsewhere, thus leaving Jordan with nothing, is risible. This statement was not a threat but was, instead, a real and legitimate option for Catterson, as well as Bosch. They were free to go to another firm if they wished and Mullman was merely making this observation. It is a search firm's job to explore all options on behalf of its clients, including options presented by other law firms. If Mullman had found a firm that offered Bosch and Catterson better opportunities, they might well have gone to that other firm, instead of Pillsbury. This is a fact, not a threat. How would that be malicious? But of course, they did not go elsewhere with MLA, so no malicious act, real or imagined, occurred.

The proponent of a tortious interference with a contract claim "must allege facts showing that the defendant's objective was to procure such a breach." *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, No. 18-CV-6739L, 2021 WL 2587160, at *4 (W.D.N.Y. June 24, 2021).

Here, there was no contract and certainly no conduct by MLA leading to a breach. MLA and Mullman followed Catterson's wishes and agreed to represent him in his move to Pillsbury. Pillsbury, in turn, sought to honor and follow the wishes of its incoming partner, by acknowledging and working with the search firm he chose. This is commerce as usual and MLA acted out of its economic interest. The Complaint fails to make a claim for tortious interference with a contract

because there is no factual allegation of any improper, malicious or unjustified act on behalf of Mullman and MLA designed to purposefully cause a breach of a contract (to the extent a contract even existed).

### B. No Contract Was Formed Between Jordan's Ladder and Pillsbury Regarding Catterson

As noted above, a binding contract was not formed between Plaintiff and Pillsbury because Jordan did not meet any of the obligations required by the Fee Agreement. She did not: "present" Catterson or provide Pillsbury with any information at all regarding Catterson's experience or practice. Nor did she satisfy the condition precedent by obtaining Catterson's express permission to represent him. Therefore, Plaintiff does not have an enforceable contractual claim against Pillsbury. Plaintiff makes the curious assertion that even if the condition precedent "was unmet, then what would be vitiated would not be the formation of the contract itself, but rather Pillsbury's specific obligation to pay the Catterson Fee to Plaintiff." (Opposition, page 9.) But the question before this Court is not whether Plaintiff had an enforceable contract with Pillsbury for the placement of Bosch. The question is, instead, whether Jordan's Ladder earned a payment for the placement of Catterson from Pillsbury when it failed to satisfy a condition precedent to the receipt of such a fee.

Plaintiff tries to avoid the complete lack of discourse between Jordan and Catterson, when Jordan was allegedly "presenting" him, by arguing that: "Catterson never indicated that he was working with another recruiter." (Opposition, page 11.) This is a transparent and unpersuasive attempt to flip responsibility. It was not Catterson's obligation to tell Jordan, a person he may not even have been aware of and certainly had never met, spoken or communicated with, that he was working with another recruiter. Instead, it was Plaintiff's obligation, under the Fee Agreement, to obtain his express permission to represent him either directly from him or through Bosch. Plaintiff

7

never did that. And when Catterson became aware that Jordan was operating under the erroneous assumption that she was representing him, he promptly called Jordan and clearly stated that she did not represent him and that he was represented by Mullman. (Complaint, at ¶ 44.)

Plaintiff's argument that she received express permission to represent Catterson "via Bosch," (Opposition, page 12), is inherently incongruent. It also contradicts the Complaint, which states that "Bosch specifically asked Jordan not to reach out to Catterson until Catterson had confirmed both Catterson's interest in Pillsbury as well as Catterson's willingness to speak with Jordan specifically." (Complaint, at 32.) Of course, Bosch never gave Jordan that confirmation and Plaintiff has not pled any facts that would support such a confirmation, which disposes of the notion that Catterson provided his express permission through Bosch.

The condition precedent for formation of a binding contract between Plaintiff and Pillsbury specifically for the placement of Catterson (as opposed to the representation of Bosch or any other future candidate Jordan presents to Pillsbury), was not established and in fact, Plaintiff completed none of the obligations required by the Fee Agreement, as it relates to Catterson. Therefore, there was no valid contract specific to the placement of Catterson which could form the basis of tortious interference.

### C. MLA Did Not Have Knowledge of the Terms of the Purported Contract Between Pillsbury and Jordan's Ladder

Plaintiff's Opposition attempts to mischaracterize MLA's argument on the law. But it is Plaintiff who mischaracterizes the law. To establish tortious interference with a contract, a plaintiff must show that a defendant knew not only about the existence of a contract but knew of that contract's terms. Indeed, how could a defendant avoid engaging in improper conduct if the defendant was not aware of what a contract actually said?

"A defendant's general awareness that the plaintiff did business with third parties is not enough" to satisfy this element of a tortious interference claim. *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, No. 2021 WL 2587160, at *3 (W.D.N.Y. June 24, 2021).

As stated by Judge Paul Engelmeyer: "[t]o satisfy this element of tortious interference, [Plaintiff] must plead facts showing not only that [Defendant] had knowledge of the existence of a contract, but that it had 'actual knowledge of the <u>terms</u> of the contract and of the contractual obligation that was allegedly breached.'" *Taboola, Inc. v. Ezoic Inc.,* 2020 WL 1900496, at *9 (S.D.N.Y. Apr. 17, 2020) (Emphasis added.) *See, also, Medtech Products Inc. V. Ranir, LLC,* 596 F.Supp.2d 778, 796 (S.D.N.Y. 2008) ([w]ith respect to the defendant's knowledge and intent, the defendant need not have been 'aware of all the details' of the contract, but it must have had 'actual knowledge of the specific contract.'); *A.V.E.L.A., Inc v Estate of Marilyn Monroe, LLC,* No. 12 Civ. 4828, 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018) (general allegations that a party 'knew or should have known' about the contract in question fall short" of the requirements of a tortious interference claim.) Plaintiff cites *Medtech* and *State St. Glob Advisors v Visbal,* 431 F.Supp. 3d322 (S.D.N.Y. 2020) but these cases do not support Plaintiff's position because Mullman never saw or reviewed the fee agreement.

Plaintiff's Complaint fails to allege that MLA had knowledge of the terms of the Fee Agreement and therefore, fails to establish that element of tortious interference.

### D.     Plaintiff's Request for Declaratory Relief Is Duplicative

Plaintiff's request for declaratory relief is undeniably duplicative of her cause of action for tortious interference with a contract and should be dismissed. In an attempt to illustrate the validity of its claim for declaratory relief, the Plaintiff posits the question of "whether Plaintiff or Defendant is *more entitled than the other* to the Catterson Fee, either in whole or in part." (Opposition page 23, emphasis in the original). Perhaps plaintiff is belatedly trying to manufacture

an unjust enrichment causes of action but no such cause of action is pled. Plaintiff also seeks to manufacture an artificial distinction between the two causes of action that do exist.  Plaintiff fails to recognize that the declaratory relief is duplicative because it seeks "no relief that is not implicitly sought in the other causes of action." *See, Sofi Classic S.A. de C.V. v. Hurowitz,* 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006).

Here, the question is whether or not MLA, through Mullman, wrongly interfered with a binding contract that Plaintiff had with Pillsbury.  For all of the reasons articulated in this Reply, as well as MLA's moving brief, no tortious interference occurred.

There is no half-measure here.  Jordan either is or is not entitled to the Catterson placement fee and that question will be answered entirely based on the Court's analysis of the tortious interference claim.  Therefore, the declaratory relief is wholly unnecessary.  *See, Aeolus Down, Inc. v. Credit Suisse Int'l,* No. 10 CIV. 8293 LLS, 2011 WL 5570062, at *5 (S.D.N.Y. Nov. 16, 2011).

### III. CONCLUSION

WHEREFORE for the reasons articulated in its moving papers, as well as in this Reply, MLA respectfully requests that the Court dismiss the Complaint for failure to state a claim.

Dated: New York, New York

      November 30, 2021

SHOOK, HARDY & BACON L.L.P.

_____
William E. Vita, Esq.
1325 Avenue of the Americas, 28th Floor
New York, NY  10019
(212) 989-8844
*Attorneys for Defendant*
*Major, Lindsey & Africa, LLC*